UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MULTIFAMILY CAPTIVE GROUP, LLC, a Maryland Corporation; and SAMANTHA GUMENICK, an individual,

        Plaintiffs,

  v.

ASSURANCE RISK MANAGERS, INC., a Colorado Corporation; LISA ISOM, an individual; and CALIFORNIA APARTMENT ASSOCIATION, a California Corporation,

        Defendants.

No. CIV. 08-0547 FCD DAD

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendant California Apartment Association's ("CAA" or "defendant") motion[1] to dismiss plaintiffs' First Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Multifamily Captive Group, LLC and Samantha Gumenick (collectively "plaintiffs") oppose the

---

[1] Defendants Assurance Risk Managers, Inc. and Lisa Isom have joined CAA's motion to dismiss. (Defs.' Mot. to Join Mot. to Dismiss, filed June 26, 2008).

1

motion. For the reasons set forth below,[2] defendant's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND[3]

Multifamily Captive Group, LLC ("Multifamily") is a Maryland corporation offering insurance programs for the multifamily real estate property manager or owner. (FAC ¶ 10). Samantha Gumenick ("Gumenick") is the sole operator and managing partner of Multifamily. (Id. ¶ 2). Gumenick is licensed to sell insurance in California by the California Department of Insurance. (Id.)

On or about February 7, 2006, CAA engaged plaintiffs to develop a new workers compensation insurance program for CAA to provide to its members. (Id. ¶ 13). Plaintiffs were to be compensated for this work on behalf of CAA based on commissions derived from the value of the insurance program. (Id.) CAA later authorized plaintiffs to exclusively market the workers compensation program. (Id. ¶ 23). In July 2006, plaintiffs, Lisa Isom ("Isom"), and Assurance Risk Managers, Inc. ("ARM") agreed to work together to prepare a proposed workers compensation program for CAA and share any and all broker compensation associated with establishing the program. (Id. ¶ 25).

In October 2006, plaintiffs and CAA entered into an exclusive broker agreement, in which CAA agreed that plaintiffs

---

[2] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L. R. 78-230(h).

[3] The factual background is drawn from plaintiffs' First Amended Complaint. (See Pls.' First Amended Compl. ("FAC"), filed May 15, 2008).

2

would be CAA's exclusive broker to establish its workers compensation program. (Id. ¶ 29). Subsequently, on numerous occasions, CAA orally confirmed and agreed that plaintiffs were its exclusive broker. (Id.)

As CAA's exclusive broker, plaintiffs contacted insurance companies on behalf of CAA and discussed options with CAA to develop the workers compensation program. (Id. ¶¶ 30-31, 41). However, in late April 2007, plaintiffs learned that Isom, ARM, and CAA had been secretly communicating with each other about the workers compensation program in direct violation of plaintiffs' exclusive broker agreement with CAA. (Id. ¶ 42). Isom and ARM admitted to plaintiffs that they had been secretly communicating with CAA and that they were providing proposals to CAA to establish the workers compensation program. (Id. ¶ 44). Moreover, after inducing plaintiffs not to work with Networked Insurance Agents, Inc. ("NIA") on this engagement, Isom and ARM collaborated with NIA to propose a workers compensation program to CAA, to the exclusion of plaintiffs. (Id. ¶ 46).

By early May 2007, plaintiffs prepared a workers compensation program for CAA and worked with CAA to finalize a proposal for its Board of Directors. (Id. ¶ 48-49). But in mid-May 2007, plaintiffs allege that they learned that CAA, in direct violation of the exclusive broker agreement, sent a letter dated May 15, 2007, to multiple insurance carriers authorizing Isom, ARM, and NIA to work with them to propose workers compensation program options. (Id. ¶ 51). Plaintiffs allege that CAA worked with Isom, ARM, and NIA to establish the workers compensation program with ACE Insurance based on a proposal originally

developed by plaintiffs.  (Id. ¶ 52).  Plaintiffs further allege that CAA, Isom, ARM, and NIA excluded plaintiffs from this workers compensation program in direct violation of the exclusive broker agreement.  (Id. ¶¶ 52-53).

On March 10, 2008, Multifamily filed a complaint against defendants ARM, Isom, NIA,[4] and CAA.[5]  Multifamily asserted claims for breach of contract, fraud, detrimental reliance/unjust enrichment, tortious interference with contractual relations, tortious interference with prospective advantage, and conspiracy.  On April 3, 2008, defendant CAA filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Thereafter, on May 15, 2008, an amended complaint was filed, adding plaintiff Gumenick as a party to the action and rendering defendant's prior motion to dismiss moot.  Defendant now moves to dismiss the amended complaint pursuant to Rule 12(b)(6).[6]

/////

/////

---

[4] On June 13, 2008, pursuant to Federal Rule of Civil Procedure 41(a)(1), the parties stipulated to the dismissal of NIA without prejudice.

[5] Defendant argues that Multifamily first filed a complaint asserting substantially the same allegations and claims for relief against the defendants in this action on December 20, 2007, in the United States District Court for the District of Maryland.  However, a copy of this complaint has not been provided to the court for judicial notice.  To the extent that the complaint was voluntarily dismissed by Multifamily, the court will refrain from drawing any inferences from the dismissal of the action filed in Maryland.

[6] Defendant does not move to dismiss plaintiffs' fourth and fifth claims for relief for tortious interference with contractual relations and tortious interference with prospective advantage.  As such, the court does not address these claims.

4

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1973 (2007). Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S.

/////

506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69, 73 (1984)).

**ANALYSIS**

**A.    Breach of Contract**

Defendant argues that Multifamily was the only party to the alleged exclusive broker agreement with CAA and that the FAC "contains absolutely no allegation to the effect that Plaintiff GUMENICK was a party to any contract with CAA." (Def.'s P. & A. in Supp. of Mot. to Dismiss ("MTD"), filed May 22, 2008, 1:21-22). CAA also claims that Multifamily "has at all times conceded that the supposed exclusive broker agreement was solely with MCG [Multifamily] and not GUMENICK." (Def.'s Reply P. & A. in Supp. of MTD ("Reply"), filed Aug. 14, 2008, 1:21-22).

The court finds defendant's assertions unsupported by plaintiffs' FAC. The factual allegations in the FAC assert that the exclusive broker agreement was entered into by both Multifamily and Gumenick.[7] Further, nothing in plaintiffs' prior pleadings directly contradicts these allegations, nor do plaintiffs "concede" that the exclusive broker agreement was solely with Multifamily.[8] As such, viewing the allegations in the light most favorable to plaintiffs, plaintiffs Multifamily

---

[7] Plaintiffs Multifamily and Gumenick are referred to collectively in the FAC as "Multifamily." (See FAC ¶ 2).

[8] Multifamily is within its rights to amend its pleading once as a matter of course before being served with a responsive pleading. See Fed. R. Civ. P. 15(a)(1). Once amended, the original complaint no longer performs any function as a pleading. Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1180 (C.D. Cal. 1998); see also Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1989).

6

and Gumenick were both parties to the exclusive broker agreement with CAA.

### 1. **Commissions**

Defendant seeks to dismiss plaintiffs' claim for breach of contract on the ground that plaintiff Multifamily did not have a license to provide insurance brokering services in California. Defendant contends that, as a result of its unlicensed status, any alleged contract with Multifamily was illegal and therefore, cannot give rise to an enforceable obligation against CAA.

Pursuant to California Insurance Code section 1631, "a person shall not solicit, negotiate, or effect contracts of insurance . . . unless the person holds a valid license . . . ." The person to whom a license is issued is the holder of the license. Cal. Ins. Code § 1627. "Person" is defined by the California Insurance Code as "any person, association, organization, partnership, business trust, *limited liability company*, or corporation." Id. § 19 (emphasis added). Furthermore, any person who transacts insurance without a valid license is guilty of a misdemeanor. Id. § 1633.

Based upon a plain reading of the applicable California Insurance Code sections, Multifamily needed to be licensed in order to provide insurance brokering services to CAA. See Cal. Ins. Code § 1631. However, Multifamily, as a limited liability company, was not duly licensed.[9] Only Gumenick possessed the required license to sell insurance in California. (See FAC ¶ 2).

---

[9] Plaintiffs do not dispute the Multifamily was not licenced; rather, they argue that it does not need to be licensed. (See Pls.' P. & A. in Opp'n to Mot. to Dismiss ("Opp'n"), filed Aug. 5, 2008, at 5-7).

7

The California Supreme Court has held that an unlicensed insurance agent cannot recover unpaid commissions in a claim for breach of contract. Fewel & Dawes, Inc. v. Pratt, 17 Cal.2d 85 (1941). In Fewel, the plaintiff, an unlicensed insurance agent, entered into a written agreement with a licensed life insurance broker, the defendant. Id. at 87. The parties agreed to split the commissions on the sale of a life insurance policy. Id. Later, the plaintiff assigned his interest in the agreement to his corporation, which was a duly licensed insurance broker. Id. at 88. In a suit to recover the unpaid commissions, the Supreme Court held that the written agreement was between the plaintiff and the defendant, as individuals. Id. at 89. As a result, "[s]ince [plaintiff] was at no time licensed as an insurance broker or agent, he could not legally solicit insurance or receive commissions; therefore, neither he nor his assignees can enforce the contract." Id. at 90. As such, the court held that all the acts that the plaintiff performed pursuant to the agreement were illegal[10] and did not give rise to any enforceable obligation. Id.

Similarly, in this case, Multifamily is not entitled to receive commissions arising out of the exclusive broker agreement because it was not licensed. As in Fewel, Multifamily, as an unlicensed insurance broker in California, could not legally solicit insurance for CAA or receive commissions arising

---

[10] Insurance Code section 1714, now repealed, provided that any person who acted as a life insurance broker or agent without a license was guilty of a misdemeanor. This has been superseded by Insurance Code section 1633, which makes the transaction of insurance without a valid license a misdemeanor.

thereunder.  Furthermore, because Insurance Code section 1633 criminalizes the unauthorized transaction of insurance without a license, even if a valid agreement existed between Multifamily and CAA, any acts performed under the contract by Multifamily would be illegal.  See Cal. Civ. Code § 1667 (contract that is contrary to an express provision of law is unlawful); Vick v. Patterson, 158 Cal. App. 2d 414, 417 (1958) ("[i]t is elementary that a contract whose object is unlawful is void").

Therefore, to the extent that an alleged exclusive broker agreement existed between Multifamily and CAA, defendant's motion to dismiss the breach of contract claim is GRANTED.

However, to the extent that plaintiffs allege an exclusive broker agreement existed between Gumenick and CAA, defendant's argument regarding plaintiff's inability to claim commissions is inapplicable because plaintiffs sufficiently allege that Gumenick is licensed to sell insurance in California by the California Department of Insurance.  (FAC ¶ 2).

### 2. **Statute of Frauds**

Defendant argues that even if an alleged exclusive broker agreement existed between plaintiff Gumenick and defendant, it would be barred by the statute of frauds.  Under California Civil Code section 1624(a)(1), an unwritten contract is invalid if "by its terms [it] is not to be performed within a year from the making thereof."  This statute of frauds provision has been interpreted literally and narrowly by California courts.  See Plumlee v. Poag, 150 Cal. App. 3d 541, 548 (1984).  Only those contracts which expressly preclude performance within one year
/////

are unenforceable. Id.; White Lighting Co. v. Wolfson, 68 Cal. 2d 336, 343 (1968) (en banc).

First, defendant argues that taking plaintiffs' allegations as true, the alleged agreement lasted more than one year because plaintiffs first commenced discussion with CAA prior to February 2006 and was still in discussions with CAA in May 2007. However, based upon the allegations in the FAC, the alleged exclusive broker agreement was entered into in October 2006, not February 2006. (See FAC ¶ 29). While defendant cites February 2006 as the commencement of the agreement, the FAC alleges that CAA only "engaged" plaintiffs to develop the workers compensation program at that time. (FAC ¶ 13). The contract at issue was entered into in October 2006. (FAC ¶ 29). Further, plaintiffs allege that only seven months after entering into the alleged exclusive broker agreement, the parties were working together to finalize a proposal to present to CAA's Board of Directors regarding the workers compensation program. (FAC ¶¶ 29, 49). Therefore, the alleged agreement could have been performed within one year as required by California Civil Code section 1624(a)(1).

Second, defendant contends that the alleged exclusive broker agreement would be barred by the statute of frauds because plaintiffs seek damages in the form of commissions for the life of the workers compensation program, and as such, the alleged agreement cannot be performed within one year. Courts have found that contracts providing for the payment of commissions after one year does not violate the statute of frauds. For example, the California Supreme Court has held that the statute of frauds does not invalidate oral employment contracts that call for payment of

1  commissions after one year or upon termination of the employment
2  relationship.  Rosenthal v. Fonda, 862 F.2d 1398, 1401 (9th Cir.
3  1988) (citing White Lighting Co., 68 Cal. 2d at 344).  In White
4  Lighting Company v. Wolfson, the California Supreme Court
5  discussed the application of the statute of frauds to an oral
6  employment contract, which provided that an employee's
7  compensation would be measured in part by future commissions.
8  White Lighting Co., 68 Cal. 2d at 342-43.  The Court held that
9  the statute of frauds did not bar such an employment contract,
10 even though the commissions could not be calculated until after
11 one year had elapsed.  Id. at 343.  The Court reasoned that the
12 alleged oral contract could have been terminated at will by
13 either party, thereby potentially allowing performance within one
14 year.  Id. at 344.  When the employee's relationship with the
15 employer ended, the employee had completely performed; the
16 employer's performance consisted of nothing more than
17 compensating the employee.  Id.
18     Similarly, in this case, plaintiffs' compensation would be
19 measured by future commissions derived from the value of the
20 workers compensation program.  Since approximately seven months
21 had elapsed from the inception of the exclusive broker agreement
22 to the finalization of a workers compensation proposal,
23 performance could have been completed by plaintiff Gumenick
24 within one year.  Any resulting compensation that would be paid
25 after one year would be based on commissions resulting from
26 plaintiff Gumenick's complete performance.  Therefore,
27 defendant's motion to dismiss plaintiff Gumenick's breach of
28 contract claim is DENIED.

11

**B.   Fraud**

Defendant seeks to dismiss plaintiffs' claims for fraud because (1) plaintiffs failed to plead fraud with particularity as required under Federal Rule of Civil Procedure 9(b); and (2) plaintiffs cannot claim any resulting damages under their fraud claim because Multifamily, as an unlicensed insurance broker, is not entitled to recover the claimed commissions

**1.   Failure to Plead with Particularity**

Defendant argues that plaintiffs' fraud claim fails to specifically allege who from CAA made the fraudulent statements and whether those individuals had authority to speak on behalf of CAA.

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  In order to comply with the requirements of Rule 9(b), the circumstances constituting the alleged fraud "must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).  The plaintiff "must set forth more than the neutral facts necessary to identify the transaction.

12

The plaintiff must set forth what is false or misleading about a statement, and why it is false." Id. (quoting Decker v. GlenFed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994)) (emphasis in original).

Rule 9(b) does not require plaintiffs to provide the identity of the individual(s) making the alleged fraudulent statements. See Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) ("[t]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant."); Marcelos v. Dominguez, No. C08-00056, 2008 WL 2788173, *6 (N.D. Cal. July 18, 2008). At a minimum, plaintiffs must "identify the role of each defendant in the alleged fraudulent scheme." Swartz, 476 F.3d at 765.

Plaintiffs have satisfied the pleading requirement for fraud under Rule 9(b). They have identified the date and content of the alleged misrepresentations. (See FAC ¶¶ 10-53, 61). Plaintiffs have also identified the role of each defendant in the alleged fraud. Since this information gives defendant sufficient notice to defend against the particular misconduct that is the basis of plaintiffs' claim , plaintiffs have pleaded fraud with particularity as required by Rule 9(b).

**2.  Damages**

Defendant also argues that plaintiffs' fraud claim should be dismissed because plaintiffs cannot establish any resulting damage under the alleged exclusive broker agreement because Multifamily is not entitled to recover the claimed commissions.

The elements of a cause of action for misrepresentation or fraud under California law are: "1) a misrepresentation (false

13

representation, concealment, or nondisclosure); 2) knowledge of falsity (or scienter); 3) intent to defraud, i.e., to induce reliance; 4) justifiable reliance; and 5) *resulting damage*." Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 990 (2004) (emphasis added). "A plaintiff may recover for fraud when he shows that by reason of a defendant's misrepresentations he has sustained some pecuniary damage or injury by reason of having been put in a position worse than he would have occupied had there been no fraud." R.D. Reeder Lathing Co. v. Cypress Ins. Co., 3 Cal. App. 3d 995, 999 (1970); see also Cal. Civ. Code §§ 1709, 3333.[11]

Contrary to defendant's argument, plaintiffs are not seeking damages solely in the form of lost commissions. In the FAC, plaintiffs allege both punitive and compensatory damages, "including but not limited to at least the full value of commissions to be paid on the workers compensation program. . . ." (FAC ¶¶ 66-67). As such, plaintiffs are claiming damages separate and apart from the alleged lost commissions. Defendants have failed to proffer any argument of case law regarding

/////
/////
/////

---

[11] Section 1709 provides "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code § 1709. Section 3333 provides "[f]or the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Cal. Civ. Code § 3333.

14

plaintiffs' ability to pursue damages under alternative theories, such as restitution.[12]

Moreover, defendant's argument does not apply to the alleged exclusive broker agreement between CAA and Gumenick because she is a licensed insurance broker. To the extent that Gumenick may be a party to the alleged agreement, she may be entitled to recover commissions arising from the workers compensation program.

Therefore, defendant's motion to dismiss plaintiffs' fraud claim is DENIED.

## C.  Unjust Enrichment & Conspiracy

Defendant also argues that plaintiffs have failed to state a claim for detrimental reliance/unjust enrichment and conspiracy because Multifamily, as an unlicensed insurance broker, cannot sue for damages arising out of lost commissions from an illegal and unenforceable contract.[13]

---

[12] The court need not address whether plaintiffs would in fact be entitled to recover commissions from the alleged exclusive broker agreement under fraud, unjust enrichment, or tort theories of recovery. Defendant only cites to Fewel, which precluded recovery of commissions in a breach of contract action and did not discuss the award of such damages under fraud, unjust enrichment, or tort theories of recovery. Moreover, defendant has failed to raise any argument with respect to other theories of recovery. However, nothing in this order precludes the parties from raising these issues at a later stage in the litigation.

[13] The court notes that there is no cause of action in California for unjust enrichment. Merchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003). Rather, it is "a general principle, underlying various legal doctrines and remedies." Id. (internal citations omitted). "It is synonymous with restitution." Id. (internal citations omitted). In this case, plaintiffs have alleged a cause of action for unjust enrichment, however, mislabeling a cause of action is not fatal to the complaint, as long as the necessary facts of that claim are properly pled. Mazur v. eBay Inc., 2008 U.S. Dist. WL

15

1    As set forth above, plaintiffs have alleged damages separate
2 and apart from commissions.  (See FAC ¶¶ 69-73).  Moreover, this
3 argument only applies to plaintiff Multifamily because Gumenick
4 is licensed.  Accordingly, defendant's motion to dismiss
5 plaintiffs' claims for detrimental reliance/unjust enrichment and
6 conspiracy is DENIED.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff Multifamily's claim for breach of contract is GRANTED. In all other respects, defendant's motion to dismiss is DENIED.

IT IS SO ORDERED

DATED: September 26, 2008

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

618988, at *14 (N.D. Cal. Mar. 4, 2008) (citing McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004)).  Therefore, the court considers plaintiffs' FAC in general to determine if an appropriate cause of action can be gleaned from the alleged facts, which would give rise to a restitutionary remedy.