UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MULTIFAMILY CAPTIVE GROUP, LLC, a Maryland Corporation; and SAMANTHA GUMENICK, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>ASSURANCE RISK MANAGERS, INC., A Colorado Corporation; LISA ISOM, an individual; CALIFORNIA APARTMENT ASSOCIATION, a California Association,<br><br>    Defendant.<br>_____/ | NO. CIV. 08-cv-00547 FCD DAD<br><br><u>MEMORANDUM AND ORDER</u> |

----oo0oo----

This matter is before the court on a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Plaintiffs Multifamily Captive Group ("MCG") and Samantha Gumenick ("Gumenick") (collectively "plaintiffs") move for summary judgment on their unjust enrichment/restitution claim, asserting that there is no genuine issue of material fact that defendants Lisa Isom ("Isom") and Assurance Risk Managers, Inc.

1

("ARM") (collectively "defendants") received a benefit from plaintiffs' efforts, the benefit was received at the expense of plaintiffs, and it is unjust for defendants to retain this benefit. For the reasons set forth below, plaintiffs' motion is DENIED.

## BACKGROUND[1]

MCG is a Maryland corporation offering insurance programs tailored to the needs of multifamily and real property owners and managers. (First Amended Complaint ("FAC"), filed May 15, 2008, at ¶¶ 1, 10.) According to the Complaint, MCG "brings together experts in residential and commercial real estate with authorities in insurance program management. (Id. ¶ 10.)

In early 2003, CAA, an association of owners, managers, and vendors of rental property located throughout California, began considering providing property and general liability insurance to its members. (Decl. of Vicki Walters in Supp. of Mot. for Summ. J. ("Walter Decl."), Filed Feb. 3, 2009, at ¶ 3.) Through August 2005, CAA and Gumenick discussed a captive insurance program and/or the possibility of a sponsored property and liability program instead of a captive insurance program. (Id. at ¶¶ 6-7.) As of December 2005, CAA had not adopted a program and began contemplating selecting a broker or agency that would work with CAA to provide a property and general liability insurance program for CAA members. (Id. at ¶ 8.)

According to plaintiffs, "[o]n or about October 1, 2006, Plaintiffs and CAA, by its Senior Vice President of Operations,

---

[1] Unless otherwise noted, the facts herein are undisputed.

1  Vicki Walter, entered into an oral agreement whereby Plaintiffs
2  would serve as the exclusive broker for the creation, sale, and
3  marketing of the Insurance Programs." (Pls.' Opp'n to CAA's MSJ
4  and Cross-req. for Partial Summ. J. ("MPSJ"), filed April 2,
5  2009, at 4.)  Plaintiffs maintain that they "continuously worked
6  on CAA's behalf to establish the Insurance Programs" between
7  October 2006 and May 2007.  (Id. at 6.)
8      According to Isom, an insurance broker and president of ARM,
9  defendants first became involved with CAA when Gumenick contacted
10 Isom in August of 2006.  (Decl. of Lisa Isom in Opp'n to Pls.'
11 Cross-req. for Partial Summ. J. ("Isom Decl.") at ¶ 4.)  Isom
12 contends that Gumenick represented to Isom that she was a
13 "consultant," and they began discussing workers' compensation
14 programs for CAA in August 2006.  (Id. at ¶¶ 3-4.)  Further, Isom
15 maintains that at no time did Gumenick advise her or ARM that
16 Gumenick and/or MCG had an exclusive agreement or relationship
17 with CAA relative to the development of an insurance program.
18 (Id. at ¶¶ 5-6.)
19     Isom and Gumenick worked together for about one month; then
20 Gumenick ceased all communication with Isom.  (Id.)  Defendants
21 assert that from approximately September 2006 until late April
22 2007, defendants and plaintiffs had not communicated regarding
23 the development of an insurance program.  (Id. at ¶ 7.)
24     Plaintiffs maintain that, as of late April 2007, Isom and
25 ARM were aware Gumenick had an exclusive agreement with CAA to
26 develop insurance on their behalf.  (Pls.' Reply Mem. In Resp. to
27 Isom and ARM's Opp'n to Cross-Req. for Partial Summ. J. ("Reply
28 Mem."), filed July 3, 2009, at 2.)  Further, plaintiff contends

3

that Isom sent the following email to Gumenick to reassure her Isom and ARM would not cut plaintiffs out of any deal defendants made with CAA.

> I apologize for not calling you early today, however, was just getting ready to call you and actually had a telephone call with Vicki [Walter].  We had several very positive conversations over the past few days and I would like to discuss all possibilities that you are working on, as well as, some ideas we have been working on as well.
>
> As I explained yesterday late afternoon, I would like to get up-to-date with you and what you have been workings [sic] on and certainly do not want to disturb those ideas or plans, however, I would like to continue my efforts to provide this as an option to the Association [CAA].  It is exciting and I want you to feel assured that my intention is to not leave you out of this option.
>
> When you have some time, please give me a call and we can discuss in more detail.  If you would feel more comfortable in calling me with Vicki on the call, please do so.
>
> Thanks
>
> Lisa Isom
> Assurance Risk Managers

(Ex. 116 to Dep. of Lisa Isom ("Isom Dep.") Mar. 16, 2009.)

Defendants contend that Gumenick called Isom, a few days after the April 26, 2007 e-mail, and told Isom that Gumenick "no longer desired to work with [Isom] or ARM, stating that if [Gumenick] wanted to include [Isom] in discussions concerning the development of an insurance program, she would have returned [Isom's] calls."  (Isom Decl. ¶ 10.)  Soon thereafter, in May 2007, Isom began contacting brokers with whom Gumenick had been working.  (See Ex. 203 to Isom Dep. (May 18, 2007 email, to which Isom was copied, instructing a Networked Insurance Agents ("NIA") official not to share information with the "East Coast Broker").)

CAA ultimately selected the insurance proposal submitted by Isom on behalf of ARM.  (Decl. of Samantha Gumenick in Opp'n to

1  CAA's MSJ and in Supp. of Pls.' Cross-req. for Partial Summ. J.
2  ("Gumenick Decl."), filed Apr. 2, 2009, at ¶ 10.)  On May 30,
3  2007, Isom on behalf of ARM, CAA, and NIA, signed an agreement
4  whereby ARM would sell and service CAA's workers' compensation
5  and other property and casualty insurances to CAA members.  (Ex.
6  201 to Isom Dep.)

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).  In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.  See T.W. Elec. v.

1  Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir.
2  1987) (citing Matsushita, 475 U.S. at 587).
3       On a motion for summary judgment, the evidence of the
4  opposing party is to be believed, and all reasonable inferences
5  that may be drawn from the facts must be drawn in favor of the
6  opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
7  255 (1986).  Nevertheless, inferences are not drawn out of the
8  air, and it is the opposing party's obligation to produce a
9  factual predicate from which the inference may be drawn.
10 Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45
11 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).  Finally,
12 to demonstrate a genuine issue, the opposing party "must do more
13 than simply show that there is some metaphysical doubt as to the
14 material facts. . . . Where the record taken as a whole could not
15 lead a rational trier of fact to find for the nonmoving party,
16 there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at
17 586-87, 106 S. Ct. at 1356.

**ANALYSIS**

19      Plaintiffs Gumenick and MCG move for partial summary
20 judgement on their claim for restitution/unjust enrichment
21 against Isom and ARM.  To assert a claim for restitution, a
22 plaintiff must demonstrate that: (1) the defendant received a
23 benefit (2) at the expense of the plaintiff, and (3) the
24 retention of that benefit would be unjust.  Lectrodryer v.
25 SeoulBank, 77 Cal. App. 4th 723, 726 (2d. Dist. 2000).
26 Plaintiffs, as the moving parties, have the burden of proof at
27 the trial on their restitution claim.  See Celotex, 477 U.S. at
28 323-24.  Therefore, plaintiffs must affirmatively demonstrate

that no reasonable trier of fact could find other than for the moving party.  (Id.)

Plaintiffs assert that defendants were unjustly enriched when Isom and ARM, in violation of plaintiffs' exclusive agreement with CAA, excluded Gumenick from the transaction and received commission from an agreement with CAA whereby ARM would sell and service CAA's various insurances to CAA members. Plaintiffs assert that an email from Walter to Isom indicated Gumenick was CAA's exclusive broker. (Isom Dep. 130:11-21). Plaintiffs also contend that Isom and ARM knew Gumenick was CAA's exclusive broker because Isom wrote Gumenick an email on April 26, 2007 representing to Gumenick, Isom had no intention of "leaving [Gumenick] out" of the discussions.  (Ex. 116 to Isom Dep.)

However, defendants argue that it is an open question as to whether plaintiffs had an exclusive contract with CAA.  (Mem. in Opp'n to Pls.' Cross-Req. for Partial Summ. J. ("Opp'n Mem."), filed May 29, 2009, at 8.)  Defendants contend that CAA's request for proposals from Gumenick was simply "a call for an offer," and the proposal submitted by plaintiffs to CAA merely constituted an offer, which did not create a contract between the two parties. See Hanley v. March & McLennan-J.B. F. Davis & Sons, Cal. App. 2d 787, 794 (1941).[2]  Indeed, CAA has previously presented evidence that it did not have an "exclusive broker agreement" with plaintiffs.  (Decl. Of Tom Bannon in Supp. of Mot. for Summ. J.

---

[2] The court previously held there were triable issues of material fact with respect to plaintiffs' claims against CAA for breach of contract, conspiracy and restitution/unjust enrichment.

7

("Bannon Decl."), Filed Feb. 3, 2009, at ¶¶ 2-3.)  Also, Isom maintains that Gumenick "was always referencing herself as [CAA's] business consultant" rather than a broker.  (Isom Dep. at 130:25-131:4).  Finally, defendants proffer evidence suggesting Gumenick knew she was not CAA's exclusive broker because she was aware CAA was communicating with other brokers.  (Gumenick Dep. 89:9-97:16.)

Defendants also contend that the commission received was not unjust because Gumenick terminated her working relationship with defendants after receiving the April 26, 2007 email.  Defendants present evidence that Gumenick called Isom shortly after the email was sent and "advised Isom that Plaintiffs no longer desired to work with her."  (Isom Decl. ¶ 10.)  Isom asserts that she justifiably concluded plaintiffs did not want to be a party to any future proposals submitted by the defendants. (Opp'n Mem. at 8.)  Defendants thus contend there was nothing unjust in their May 2007 offer, and CAA's subsequent acceptance, of a competing proposal for the development of an insurance program and marketing agreement to do so.  (Isom Decl. ¶ 12; Ex. 105 to Isom Dep.)

Therefore, in light of defendants proffered evidence, plaintiffs have failed to meet their burden of establishing that no reasonable trier of fact could find other than for them.

## CONCLUSION

Based on the foregoing analysis plaintiffs' partial motion for summary judgement is DENIED.

/////
/////

IT IS SO ORDERED.

DATED: June 15, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE